GEORGE W. CUMMINS *vs.* PRESLEY & ENOCH SPRUANCE.

A party may recover damages for a collision on a public highway who may not have been entirely without fault, if his fault did not contribute directly to the collision.

No one has a right to obstruct a navigable stream, but the occasional grounding of a vessel is an obstruction incident to commerce and not unlawful.

Duck Creek, in Kent county, is a common highway for all vessels whose draft of water permits them to navigate it.

In case of collision of vessels the liability for damages depends upon the immediate causes. The gist of the action is negligence, misconduct, or want of nautical skill.

A vessel out of place, is not to be run into with impunity, if she may be avoided, by the use of ordinary skill and care.

Accidental injuries do not give any right of action; nor injuries immediately resulting from the mutual fault of both parties.

The measure of damages is the injury sustained or cost of repairs. The loss of profits by the voyage is too remote and consequential.

KENT, October term, 1845. This was an action of trespass on the case for damages arising from a collision of vessels. The plea was, not guilty.

The plaintiff stated his claim to be for damages arising from a collision of vessels, caused by the negligence of defendants' captain. The plaintiff's schooner was lying aground and loaded in Duck Creek, near Cork's Point, when she was run into and materially damaged by defendants' sloop, Sally Ann, and obliged to go into a different port from that to which she was bound, to be repaired. Plaintiff's vessel, though aground in the creek, was lying so that other vessels could pass on either side, there being on one side seventy-eight feet of navigable water. Defendants' captain was warned to take that side but refused; and, attempting to pass on the other side, run into plaintiff's schooner. He called a number of witnesses to prove this case.

*Frame* opened for the defendants. He assumed, 1st. That if the jury should think this was an unavoidable accident, not owing to the negligence or want of skill in the defendants' captain in the management of his vessel, there could be no recovery, but whatever party suffered damage must bear it without redress. 2. Even if the defendants' captain was guilty of negligence and want of due care; if the jury should also be of opinion that the plaintiff's captain was in any material degree guilty of negligence by his position or conduct, the plaintiff could not recover. In other words, if the collision was the result of the common blunder, or misconduct or neglect of both

parties, the jury could not apportion the degrees of negligence between them, but must find for the defendants.

He called witnesses to prove that the plaintiff's schooner was unfit for that navigation; that she was not in the habit of going there, this being her first trip; that she grounded near the middle of the creek, and that the plaintiff voluntarily loaded her down after she grounded, so as to prevent her from floating with the next tide, and to keep her in a position of danger, and of obstruction to others. He maintained that though Duck Creek is a navigable stream and free to all persons and all vessels that can go in it, still it is not navigable for others; and no one has the right to experiment upon the free navigation of others by squeezing in improper vessels, and stopping up the navigation. Such an obstruction is a public nuisance; generally prejudicial; and, if it results in the accident of a collision, the party has no right to complain.

The plaintiff, in reply, called nautical men to prove that it would have been impossible with the wind and tide as it was, and the mainsail of the sloop down, jib up, and hauled to windward, to have got the sloop into the schooner; as the jib must have directed the bow to shore and kept her in the mud. His witnesses also reaffirmed their statement that the mainsail of the sloop was not down more than from one-third to a half. They attributed the collision to this.

*Smithers*, for plaintiff, to the jury.—We agree that we must prove negligence or want of skill in the defendants, or those in charge of their vessel. They are liable for the negligence of their servants. But we deny the position that if both were negligent, plaintiff cannot recover; the question is whether the defendant by due care on his part, could have avoided the accident. If the collision was the result of *inevitable* accident the plaintiff cannot recover; if of the negligence or unskilfulness of defendants' captain, as the proof shows it was, the plaintiff is entitled to recover: 1st. The cost of repairs, $39 79; 2d. The permanent and irreparable damages, proved to be at least $100; 3d. The loss of trips, $130.

He cited, 5 *Esp. Rep.* 43; 19 *Eng. C. L. Rep.* 298; 14 *Ibid* 445; 2 *Harr. Rep.* 481.

*Frame*, for defendants.—It is admitted that they must prove the negligence. But I contend that if the plaintiff was also to blame he cannot recover. If he recover it must be for the negligence of the defendants alone, and not their negligence combined with his own. The plaintiff was to blame 1st, for attempting to navigate the creek with a vessel entirely too large for the depth of water. The creek

is not a highway for the use of such vessels, but only for vessels suited to the navigation. No one has the right to block up the highway with a vehicle unfit for it, and such as will impede the passage of others in the free use of it. He would not even have a right to occupy the highway with a proper vehicle an unreasonable time. The principle on this subject is that every one has the right to use a navigable stream in the way in which it is navigable, and with only such vessels as are suited for the navigation. The schooner Elizabeth was unfit for this navigation; and the loading her down above this bend and whilst on the shoal was a misconduct by the plaintiff, which if it in *any degree* enters into the result and helps to produce the collision, will deprive the plaintiff of a right to recover. (5 *Carr. & P.* 175, 421 ; 6 *Ibid* 23 ; 9 *Ibid* 601.)

The putting such a vessel in this creek to block up the passage of others is an encroachment upon a public highway and is a nuisance, which any one may abate. (3 *Bac. Ab.* 686, *tit. Nuisance, a.; Russel on Crimes* 317-18-9, *tit. Highway and Nuisances.*)

A common carrier has no right to encumber himself with so great a load as to impede the passage of others. (*Russ.* 319-20.) So here the plaintiff had no right so to overload his schooner with freight, as to keep her aground in the middle of this creek, which is a public highway, so as to make it *less convenient* for others to pass and repass. And it is not enough that space was left by which others might possibly pass. For where a common carrier having a right to load and unload in a public street, took an unreasonable time in so occupying the highway, he was held guilty of a nuisance. (*Russ.* 319-20.)

It is no answer to say that a use of the public highway is *necessary* for the carrying on the party's business ; it must be necessary *for public good.* (*Russ.* 320, &c.)

If then Mr. Cummins introduced into the navigation of this Duck Creek a vessel unfit for it, and which was a nuisance in it ; or if he so loaded her down as to detain her aground in this highway an unreasonable time, he is in fault, he contributes to bring about the result of this collision ; and without inquiring whether he or the defendants' vessel were *most* to blame he cannot recover. It produces a confusion of culpability ; a mixture of causes ; which a jury cannot divide and separate ; and which they need not attempt to separate ; for it is the plaintiff's own misconduct which produces the confusion. Just as if a man pour his own gold into another's crucible and mingle it with his he shall lose it all.

*Bates*, in reply.—The defendants were bound to provide a master for their vessel, who should not only do all in his power to prevent accident, but who should have competent knowledge and skill to determine what is the best course to pursue in every exigency. Nor will the existence of any the most remote culpability on the part of the plaintiff defeat his action, as has been contended. Even if the schooner was out of place, a vessel running into her would be liable in damages, if he could have avoided her by the use of ordinary care and skill. The concurrence of fault to deprive the plaintiff of his action must be a fault in immediate connexion with the injury. (33 *Com. L. Rep.* 252.)

The case then turns upon the question, whether this collision arose from the negligence of defendants' captain, and might have been avoivded by the exercise of proper skill and caution. The plaintiff's vessel could not in any degree have contributed to it, for she was not in motion; she was where she had a right to be, and there was room on both sides of her to pass; abundant room on one side, of which the defendants' captain had notice, but he refused to pass on that side, and run into her by endeavoring to pass to windward; other vessels passed without difficulty.

*The Chief Justice* charged.—This is an action on the case, to recover a compensation in damages for an injury to the plaintiff's schooner, caused whilst lying in Duck Creek, in this county, by the defendants' sloop running foul of her.

The principal question is, to whose fault, negligence, or improper conduct, is the injury to be attributed?

The defendants' counsel contends, that if the plaintiff was in fault in any respect; that is, if his act, misconduct, or negligence, or that of the master of his schooner tended even indirectly or remotely, to produce the injury, the plaintiff is not entitled to recover; although the direct and immediate cause of the injury, was the negligence or want of proper skill or arrangement, on the part of the master of the defendants' vessel: That the plaintiff was so in fault; 1st. Because his schooner was unfit for the navigation of the creek, by reason of her draught of water; 2d. Because being so unfit, she was improperly loaded down; which in itself was unlawful; 3d. Because taking a vessel of her draught of water into that creek, was obstructing a public highway, and therefore a nuisance.

*The Court* do not assent to the doctrine of the defendants' counsel. As a general principle, it is admitted, that no person has a right to obstruct, to the prejudice of others, a navigable stream, by any kind

of vessel. But it appears by the testimony of some of the witnesses in this cause, that one or more vessels of the same draught of water with the plaintiff's schooner, and one of a greater draught, were in the habit of navigating Duck Creek; and of others, that she did not draw six inches more water than some, nor eighteen inches more than the rest; that she was of less beam than the vessel of the defendants; that when fully loaded with grain, she draws seven feet; that after she had commenced loading, she dropped down to Caulk's Point, took in grain from a shallop; and grounded at an unusually low tide, where the usual depth of water at an ordinary tide is from seven and a half to eight and a half feet; that the injury occurred whilst she was thus aground; that she lay straight up and down the creek, at a distance from the New Castle shore, sufficient for three or four vessels to lie abreast, and at a distance from the Kent shore, sufficient for two vessels to lie abreast; that when the injury occurred, the tide was about two-thirds flood, and the wind fair for the defendants' vessel to have passed on the New Castle side; and that two vessels had passed without difficulty, at the first of the flood.

If these facts are sufficiently proved to the satisfaction of the jury, neither taking the plaintiff's schooner into the creek, nor loading her in the manner she was loaded, nor her occupying the place where she grounded, was an unlawful obstruction of the channel. Duck Creek is a common highway for all vessels whose draught of water permits them to navigate it. No law prohibits a vessel of the description of the plaintiff's, from proceeding up and down the creek for the purposes of trade; nor does her grounding at a low tide, and remaining until a high tide might enable her to get off, constitute a public nuisance. If it did, it follows as a legal consequence, that the owner or master would be liable to an indictment; and that any persons might lawfully abate the nuisance by removing the obstruction. This might not at all times be effected without injury or destruction to the cargo or vessel. If the doctrine urged by the defendants' counsel were correct, it would seriously affect not only the trading interests connected with the navigation of our creeks, but also the commercial interests connected with the navigation of large rivers. Ships of the largest class and tonnage, when deeply laden, have often grounded in ascending or descending the river Delaware; and in some degree, have thus obstructed its navigation. But who ever considered it an unlawful obstruction of the channel, or a public nuisance, when vessels, by the exercise of ordinary care

and skill, could readily pass on either side of the ship that was thus aground?

Therefore, the taking the plaintiff's schooner into Duck Creek, was no such fault or misconduct on the part of the plaintiff or the master, as excuses the defendants, if their vessel, by the negligence, want of competent skill or proper management on the part of her master, ran foul of the plaintiff's schooner. In cases of injuries of this kind, the fault of the plaintiff, in order to prevent his recovery, and to excuse the defendant, must be such as directly tended or contributed to produce the injury. If plaintiff's negligence, want of due care and skill, or his misconduct, is the immediate cause of the disaster, he must bear his own loss. But although there may be negligence on his part, yet unless he might, by the exercise of ordinary skill and care, have avoided the consequences of the defendants' negligence or misconduct, he is entitled to recover. If the disaster is caused by negligence, want of due diligence or of skill on both sides, both parties being equally to blame, neither can maintain an action in a court of law. If it arises from physical causes, beyond the control of the party inflicting the injury, and without fault in any one, the party injured must bear his own loss.

The gist of this action is the negligence, misconduct, or want of ordinary nautical skill or proper management on the part of the master of the defendants' vessel. This is a question of fact for the jury to determine, and the burden of proof lies on the plaintiff. Although the situation of the plaintiff's schooner might have exposed her to injury, yet if she was lying in such a position, that a person of ordinary nautical skill, using due care and diligence, could have avoided her, the master of the defendants' vessel is without excuse for running against her; and the defendants are responsible. If the injury was the result of accident happening from the winds, the waves, the state of the tide, or from other circumstance, which proper precaution, foresight, and competent skill could not guard against, the defendants are not liable.

If the jury find a verdict for the plaintiff, they ought to award him a fair compensation in damages, for the injury done to his schooner. In estimating them, the true measure is, the actual damage sustained by the plaintiff at the time and place of the injury. The expense of the repairs necessary and suitable to restore the schooner to her former condition, would be the proper amount of damages. But if she was deteriorated in value, by leaks caused immediately by the

injury, and which could not be remedied by the repairs, the plaintiff is entitled to a compensation for the impaired value of his vessel, as well as for the expense of such repairs as were actually necessary. But he is not entitled to recover any thing for the loss of the probable profits of two trips to New York, which with favorable weather, it is alleged, his vessel might have made during the winter.

Verdict for plaintiff, $139 79.

*Bates* and *Smithers,* for plaintiff.
*Frame,* for defendants.